AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

District of Kansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**the premises and devices located at 404 West 5th<br>Avenue, Ashland, Kansas,<br>as further described in Attachment A** | )<br>)<br>)<br>)<br>)<br>) | Case No. 21 MJ 6003-01-KGG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 2252A | Offenses relating to the Possession/Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Amy Kuhn, Special Agenet FBI
*Printed name and title*

Sworn to before me and signed ~~in my presence~~. *telephonically*

Date: JAN. 21, 2021

_____
*Judge's signature*

City and state: Wichita, KS

The Honorable Kenneth G. Gale
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Amy M. Kuhn, Special Agent of the Federal Bureau of Investigation, being first duly sworn, herby

depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.   I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), Kansas City Division,

Garden City Resident Agency (RA).  I have been employed as a SA of the FBI since July 2008. I am

presently assigned to work a variety of criminal and National Security matters, including but not limited

to:  weapons of mass destruction, domestic terrorism, sexual exploitation of minors, and white collar

crime cases.

2.   I trained for 21 weeks at the FBI Academy in Quantico, Virginia.  During my training, I received

extensive training in a variety of investigative and legal matters.  This included Fourth Amendment

searches, drafting search warrant affidavits and what constitutes probable cause.

3.   Before coming to the FBI, I was employed for almost two years as an Assistant County Attorney

in Ford County, Kansas.  During my time in Ford County, I was involved primarily with felony and

misdemeanor criminal cases.  I worked on cases with violations ranging from controlled substances

offenses to sex offenses and other violent crimes.  I worked with law enforcement preparing search

warrants for judges' approval as well as advised law enforcement on matters of probable cause.

4.   As a federal agent, I am authorized to investigate violations of United State laws and to execute

warrants issued under the authority of the United States.

5.   I am investigating the activities of the Internet account registered to Erik Lalicker, P.O Box 974,

Ashland, Kansas.  As will be shown below, there is probable cause to believe that Erik Lalicker, using the

internet account registered in his name has received, possessed, distributed or transported child

pornography, in violation of 18 U.S.C. §§ 2252 and 2252A.  I submit this application and affidavit in

support of a search warrant authorizing a search of Erik Lalicker's premises and devices located at 404 West 5th Avenue, Ashland, Kansas ("the premises"), as further described in Attachment "A". Located within the premises to be searched, I seek to seize evidence, fruits and instrumentalities of the foregoing criminal violations, which relate to the knowing transportation, shipment, receipt, possession, distribution and reproduction of child pornography. I request authority to search the entire premises, including the residential dwelling, and all out buildings located on the premise, and any computer(s) and computer media located therein where the items specified in Attachment "B" may be found, and to seize all items listed in Attachment "B" as instrumentalities, fruits and evidence of crime.

6.    The statements in this affidavit are based in part on information provided by FBI Special Agent Adam Sucheski of Philadelphia division, and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe evidence, fruits and instrumentalities of the violations of 18 U.S.C. §§ 2252 and 2252A are presently located at 404 West 5th Avenue, Ashland, Kansas.

**STATUTORY AUTHORITY**

7.    This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and 2252A relating to material involving the sexual exploitation of minors.

   a.    Title 18, U.S.C. § 2252(a)(1) prohibits knowingly transporting or shipping in interstate or foreign commerce, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct.

   b.    Title 18, U.S.C. § 2252(a)(2) prohibits knowingly receiving or distributing, by computer or mail, an visual depiction of minors engaging in sexually explicit conduct that has been mailed, shipped, or transported in interstate or foreign commerce. That section also prohibits knowingly reproducing any visual depiction of minors engaging in sexually

explicit conduct for distribution in interstate or foreign commerce by any means, including by computer or mail.

c.  Title 18, U.S.C. § 2252(a)(4) prohibits possessing one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been transported in interstate or foreign commerce, or that were produced using materials that have traveled in interstate or foreign commerce.

d.  Title 18, U.S.C. § 2252A(a)(1) prohibits knowingly mailing, transporting, or shipping child pornography in interstate or foreign commerce by any means, including by computer.

e.  Title 18, U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by an means, including by computer.

f.  Title 18, U.S.C. 2252A(a)(3)(A) prohibits a person from knowingly reproducing child pornography for distribution through the mail or in interstate or foreign commerce by any means, including by computer.

g.  Title 18, U.S.C. § 2252A(a)(3)(B) prohibits knowingly advertising, promoting, presenting, distributing, or soliciting through the mail, or using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means any material in a manner that reflects the belief or is intended to cause another to believe that the material is or contains a visual depiction of an actual minor engaging in sexually explicit conduct, or an obscene depiction of a minor engaging in sexually explicit conduct.

h.  Title 18, U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing any book magazine, periodical, film, videotape, computer disk, or other material that contains an

image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.

## BACKGROUND OF THE INVESTIGATION

8.   On August 19, 2020, Philadelphia Division Online Covert Employee (OCE-10498) was operating on Kik as an adult male when he joined Kik group called "#c.hild.p.orn". The group had no administrator noted.

9.   OCE-10498 posted "So they need admins? Sweet" and noted that he had a daughter, and asked "anyone got infant".

10.  On August 20, 2020, at 7:43:00 AM (UTC-4) knightmoon4 kik messaged OCE-10498 "What is your wikr[1]".

11.  OCE-10498 and knightmoon4 had a brief conversation about wikr and then at 1:20:05 PM (UTC-4) knightmoon4 messaged "Did I see you say you had some original content before?"

12.  On August 20, 2020 at 1:20:26 PM(UTC-4) OCE-10498 messaged, "LOL yeah my kid. But I don't really keep it".

13.  On August 20, 2020, at 1:20:40 PM (UTC-4) knightmoon4 messaged, "Ah ok, didn't know if you would share a little".

14.  On August 20, 2020, at 1:21:20 PM(UTC-4) OCE-10498 messaged, "I always share her if your legit".

15.  On August 20, 2020, at 1:21:27 PM(UTC-4) OCE-10498 messaged, "I'm in philly hbu".

---

[1] Wickr (misspelled by the defendant as wikr) is a private messenger app available on google.

16. On August 20, 2020 at 1:21:41 PM(UTC-4) knightmoon4 messaged, "No where near Philly, in the UK".

17. On August 20, 2020 at 1:23:50 PM(UTC-4) knightmoon4 messaged, "I love watching dad's making their little girls cum".

18. On August 20, 2020, at 1:24:29 PM(UTC-4) OCE-10498 messaged "Haha no I don't mess with my kid.  Just share".

19. On August 20, 2020, at 1:25:09 PM(UTC-4) knightmoon4 sent attachment:  7144ba78-daa5-44a6-9e60-961fa225ee66.  The attachment was a 1:59 video showing a white adult male digitally penetrating and raping a young prepubescent female.

20. On August 20, 2020, at 1:25:49 OCE-10498 messaged, "Damn. Is that u".

21. On August 20, 2020, at 1:26:30 knightmoon4 messaged, "No, I wish.  I don't have any family or kids near me.  They all moved away, otherwise I have a niece I would try with".

22. On August 20, 2020, at 1:26:46 PM(UTC-4) OCE-10498 messaged, "That sucks".

23. On August 20, 2020, at 1:27:11 PM(UTC-4) knightmoon4 messaged, "Family moved to the US, I see them Every few years".

24. On August 20, 2020, at 1:27:50 PM(UTC-4) OCE-10498 messaged, "Sucks.  Where u at in England I think my pals there with his kids", and then at 1:28:03 PM(UTC-4) OCE-10498 messaged, "But I think they are only 4 and 2"  and at 1:28:09 PM(UTC-4) "He has let people play".

25. On August 20, 2020, at 1:28:30 PM(UTC-4) knightmoon4 messaged, "London, yeah I prefer older, 7-14.  I like them able to cum".   Then at 1:28:38 PM(UTC-4) "Are they boys or girls?"

26. On August 20, 2020, at 1:28:57 PM(UTC-4) OCE-10498 messaged, "Girls and he's in like lancanshire or something".

27. On August 20, 2020, at 1:28:59 PM(UTC-4) knightmoon4 messaged, "I am looking for a pedo girl to get with".

28. On August 20, 2020, at 1:29:08 PM(UTC-4) OCE-10498 messaged, "Lol white whale".

29. On August 20, 2020, at 1:29:34 PM(UTC-4) knightmoon4 messaged, "Yeah, tough but I hit them up on here, found a few but no one near me".

30. On August 20, 2020, at 1:30:01 PM(UTC-4) OCE-10498 messaged, "U wanna share any u can't have!? Lol", then at 1:30:17 PM(UTC-4), "I also want a mom w big tits", and at 1:30:32 PM(UTC-4) "My bitch ex wife had nice tits but she a white".

31. On August 20, 2020, at 1:30:34 PM(UTC-4) knighmoon4 messaged "If I can find them I'll send them your names to chat with"

32. On August 20, 2020, at 1:30:37 PM(UTC-4) OCE-10498 messaged "Whore" and then at 1:30:44 "Sweet"

33. On August 20, 2020, at 1:31:16 PM(UTC-4) knightmoon4 messaged "I would love to fuck my daughter and have mom suck my cock clean after"

34. On August 20, 2020, at 1:31:37 PM(UTC-4) OCE-10498 messaged "How olds ur kid.  U ever play w her?"

35. On August 20, 2020, at 1:31:43 PM(UTC-4) knighmoon4 sent attachment: f12553f6-b728-470c-aa3d-34daf1b2cedf.  The attachment was a video of a young prepubescent female being ejaculated on by an adult white male.

36. On August 28, 2020, MediaLab responded to a subpoena for records related to knightmoon4.  The response noted the following:

> **Knightmoon4**
> First Name: Moon
> Last Name:  Knight
> Email:  husker367@gmail.com
> Username: knightmoon4
> Birthday:  1985-08-19
>
> Recent IP addresses:  **2020/08/20 20:15:34 UTC "ip":"174.234.11.165",
> "remotePort":"12597;  2020/08/20 04:00:24 UTC "ip":"174.234.11.165",
> "remotePort":"12606**

37. On September 3, 2020, Verizon Wireless responded to a subpoena related to **2020/08/20 20:15:34 UTC "ip":"174.234.11.165", "remotePort":"12597** and **2020/08/20 04:00:24 UTC "ip":"174.234.11.165", "remotePort":"12606** and identified the customer assigned to those connections as:

> 785-324-1486
> ERIK LALICKER
>  P.O. Box 974,
> Ashland, Kansas 67831-0974
> IMEI "358275097455543"
> IMSI "311480450761968"
> Device PIXEL 3 64 GB BLACK

38. Ashland, Kansas is located in Clark County.  Affiant had contact with Clark County Sheriff's Office who knew LALICKER.  Clark County Sheriff's Office knew LALICKER to reside at the physical address, 404 West 5th Avenue, Ashland, Kansas.

### CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

39. Based on my training and experience, and the experience and training of other law enforcement officers with whom I have had discussions I have learned that individuals who are interested in the sexual exploitation of children will frequently use child pornography to satiate their prurient sexual desires. In this instance, to send child pornography on Kik messenger, the user knightmoon4 (later identified through an IP address as registered to Erik Lalicker) had to first seek out the child pornography and exert control over it. Thus, I expect the device(s) used by knighmoon4 have previously (and will probably still contain, as discussed below) additional child pornography, links to child pornography websites, or artifacts showing access to child pornography.

40. From my training and experience, and the experience and training of other law enforcement officers with whom I have had discussion, I have learned that individuals who are interested in the

sexual exploitation of children will often seek out other likeminded individuals, for the purposes of normalizing their interest, discussing historical or planned child sexual abuse, and/or advertising the trade of child pornography. In this instance, the account associated with LALICKER indicates that he has apparently engaged in this type of behavior, by creating a Kik account used to advertise and distribute child pornography via a social media network. Thus, I expect the device(s) used by or in the possession of LALICKER will probably contain evidence of communications, or attempts to communicate, with other individuals interested in the sexual exploitation of children, i.e., child pornographers.

41. From my training and experience, and the experience and training of other law enforcement officers with whom I have had discussions, I have learned that individuals who are interested in the sexual exploitation of children will protect and retain child pornography for long periods of time. Because LALICKER has shown an interest in the sexual exploitation of children, I believe LALICKER has likely continued to engage in collecting and trading child pornography, such that the devices in LALICKER's possession are likely to contain evidence of child pornography.

42. From my training and experience, and the experience and training of other law enforcement officer with whom I have had discussions, I have learned that individuals who are interested in the sexual exploitation of children will frequently utilize digital devices to access the internet to seek, obtain, and traffic in child pornography, and that the device(s) used by such individuals will retain evidence and artifacts of such activity. Typically, the individual will keep the device(s) close-by, in part for immediate access for sexual gratification and to maintain secure control over the contraband material. In this instance, an account associated with LALICKER has been used to transmit and advertise child pornography.  With these facts in mind, I think it is probable that LALICKER device(s) will contain additional child pornography and evidence associated with the possession, access, receipt, and distribution of child pornography, and that he will keep the device(s) close by, in his residence, as is typical for child pornography offenders.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

43. From my training and experience, I also know that data, or digital information, associated with the criminal activity under investigation can remain on a given device even after a user deletes the picture, video, communication, search history, etc. Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. For this reason, forensic analysis, either on-scene or (more likely) in a controlled laboratory environment can reveal the presence of such evidence and artifacts even if the user has attempted to delete or cover up his activity.

44. From my training and experience and information related to me by agents and others involved in the forensic examination of computers and other digital devices, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

     a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched;

    b.   Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

    c.   The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

    d.   Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

45.  For these reasons, off-site forensic examination may be required to determine if a given device contains evidence of the crime(s) under investigation.

46.  Based on my own experience and my consultation with other agents who have been involved in computer searches, searching computerized information for contraband, evidence, fruits, or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral devices, related software, documentation, and data security devices (including passwords), so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons for this, including:

    a. The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system.

It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices; and

b. In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU). Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software that may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

c. Additionally, based upon my training and experience and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime-including, for example, serving as the instrument through which the perpetrator of the Internet based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

## CONCLUSION

47. Based on the aforementioned factual information, your affiant respectfully submits there is probable cause to believe an individual who resides at the premises described above, and more specifically in Attachment A, is involved in possession and distribution of child pornography.  Your affiant respectfully submits there is probable cause to believe an individual residing in the premises described above has violated 18 U.S.C. §§ 2252 and 2252A.  Additionally, there is probable cause to believe evidence of criminal offenses, namely, violations of 18 U.S.C. §§ 2252 and 2252A, is located in the residence described above, and this evidence, more specifically described in Attachment "B" to this

affidavit, which is incorporated herein by reference, is contraband, the fruits of a crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

48. Your affiant, therefore, respectfully requests the attached warrant be issued authorizing the search and seizure of the items more specifically describe in Attachment "B".

AMY M. KUHN
Special Agent
Federal Bureau of Investigation

telephonically
Sworn and subscribed before me this 21 day of January, 2021.

Kenneth G. Gale
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT "A"**

**DESPCRIPTION OF THE PREMISES TO BE SEARCHED**

The property to be searched is located at 404 West 5th Avenue, Ashland, Kansas.  The residence is described as a two story, single family home.  The residence is tan in color with brown trim.  There is a covered porch facing the road.  The numbers 404 are affixed to a vertical post on the porch.  The residence is on the North side of the street and the front door faces south.  There is a driveway for the residence on the east side of the house and an affixed garage which faces east.

ATTACHMENT "B"

<u>ITEMS TO BE SEARCHED AND SEIZED</u>

1. Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica, in any format or medium, including, but not limited to computer files, prints, negatives, drawings, and paintings.

2. Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software, computer related documentation, passwords and data security devices, and storage devices), including the software or programs or applications contained therein, that may be or are used to:

a. distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

b. seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

c. communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children; and any and all data or information on the device which may relate to subparagraphs 2a, 2b, and 2c, including data or information that may reveal indicia of ownership, access, or use.

3. Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, diaries, manifestos, manuals, email messages, chat logs and electronic messages, and handwritten notes) pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

4. Any and all cameras, film, videotapes or other photographic equipment, which may be used to contain, create or duplicate child pornography, visual depictions of minors engaged in sexually explicit conduct, or child erotica.

5. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

6. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

7. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

8. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

9. Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.